[No. C001407. Third Dist. May 22, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
JAMES BRIAN GARRETT, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and J. Robert Jibson, Deputy Attorney General, for Plaintiff and Appellant.

Latimer & Kenkel and Jerry J. Kenkel for Defendant and Respondent.

**OPINION**

**BLEASE, J.**—This is an appeal by the People from an order of the superior court dismissing an information charging the offense of possession of cocaine (Health & Saf. Code, § 11350) before the defendant had been placed in jeopardy (Pen. Code, § 1238, subd. (a)(8)).[1] Proceedings under a felony complaint for the same offense had been abated in another proceeding in the municipal court pursuant to the diversion provisions of sections 1000 - 1000.5. That action was dismissed at the initiation of the defendant, under section 1381, for failure of the prosecution to bring him to trial within the 90-day period therein provided.

The prosecution refiled the action under a new felony complaint, the defendant was held to answer, and the district attorney filed an information charging the same drug offense. The defendant challenged the prosecution on grounds he was denied a speedy trial. The information was dismissed on the separate ground that the defendant's diversion status was improperly terminated and further criminal proceedings were thus still abated. With that result we disagree. We will reverse the order of dismissal.

---

[1] All further references are to the Penal Code unless otherwise noted.

## FACTS

In January 1984, a felony complaint was filed in the Justice Court for the Glenn County Judicial District, charging defendant with one count of possession of cocaine. Defendant was diverted pursuant to the provisions of sections 1000-1000.5 on August 14, 1984, for a period of two years.

In April 1985 defendant suffered an unrelated felony conviction in Butte County for possession of a controlled substance and, in November, was sentenced to a two-year term in the state prison. In the interim the justice court issued a bench warrant pursuant to an order to show cause why defendant's diversion status should not be revoked. On November 26, 1985, defendant's written notice of his desire to be brought to trial for the cocaine offense (§ 1381) was delivered to the District Attorney of Glenn County. Eventually, in March 1986, defendant was transported to Glenn County. He appeared in the justice court and moved under section 1381 to dismiss the accusatory pleading for failure to bring him to trial within 90 days of his notice. The motion was granted and the case was dismissed.

On March 25, 1986, the district attorney filed a new complaint charging defendant with the cocaine offense for which he had been diverted. He was bound over for trial in the superior court. On April 25, 1986, he filed a notice of motion to dismiss the action on the ground his state and federal constitutional rights to speedy trial had been violated. The motion was heard on May 2, 1986. The superior court did not decide this motion.

Rather, on its own motion it took judicial notice of the record of the proceedings at which the complaint had been dismissed under section 1381 and concluded, in effect, that the prosecution could not proceed under the information for the reason that the defendant was still a divertee. The People appeal from the resulting dismissal of the information.

## DISCUSSION

### I

The significance of the trial court's action must be assessed in relation to the effect which an order of diversion has upon the criminal proceeding from which the order was taken. Sections 1000 - 1000.2 provide the grounds and procedures by which a defendant charged with a specified offense may be diverted. Section 1000.2 provides that, upon an order of diversion, the "period during which the further criminal proceedings against the defendant

may be diverted shall be for no less than six months nor longer than two years." Section 1000.3 provides that, if the defendant is performing unsatisfactorily in the diversion program that the court may (or shall) determine "whether the criminal proceedings should be reinstituted" and, if so, "the criminal case shall be referred back to the court for resumption of the criminal proceedings." Plainly, these sections provide that the criminal proceedings from which the diversion was taken shall not be "reinstituted" or "resum[ed]" during the period of diversion and hence are abated. Consequently, the proscription may not be lawfully circumvented by the simple expedient of refiling the criminal charges.

This (correct) reading of the diversion statutes apparently led the trial court to consider the validity of the dismissal by the justice court of the diverted criminal proceedings under the aegis of section 1381. The trial court reasoned that the defendant's period of diversion could only be terminated by the statutory means provided in section 1000.3, hence the abated action was not "pending," as required by section 1381. It concluded that the dismissal was a "nullity," the period of diversion was still in effect, and the criminal proceedings could not be reinstituted by refiling the accusatory pleading. Dismissal of that pleading was, on this reasoning, appropriate.

The superior court's reasoning is based upon the assumptions that the justice court lacked jurisdiction in the fundamental sense to terminate the diversion by dismissal of the underlying criminal proceedings under section 1381 and that defendant could have, in this action, collaterally attacked the erroneous dismissal. Both assumptions are wrong.

Defendant did not move to dismiss the information on the grounds that the superior court lacked jurisdiction because of the claimed pendency of the diversion proceedings. Nor did he move to set aside the information under section 995 on the ground that he had been illegally committed because of the magistrate's lack of jurisdiction. Instead he made a nonstatutory motion to dismiss on the grounds that his speedy trial rights had been violated. Thus the superior court acted on its own motion when it dismissed the information for the perceived jurisdictional defects. We begin our analysis with the power of the superior court to dismiss an information on its own motion.

## II

Section 1385 authorizes a superior court, for reasons stated in the minutes, to dismiss a criminal action on its own motion "in furtherance of justice . . . ." But this language " 'requires consideration both of the constitu-

tional rights of the defendant, and *the interests of society represented by the People,* in determining whether there should be a dismissal.' . . . At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' " (*People* v. *Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193], original italics; citations omitted.) Since society has a legitimate interest in the fair prosecution of crimes properly alleged, a dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion. (*Id.,* at p. 947.) "The requirement of the statute that a 'dismissal' in the 'furtherance of justice' be accompanied by a specification of reasons, acts as a restraint on the exercise of that discretion and contemplates that the exercise of such discretion be reviewable by a higher court." (*People* v. *Sanders* (1983) 145 Cal.App.3d 218, 225 [193 Cal.Rptr. 331].)

The Attorney General contends that even if the section 1381 dismissal by the justice court was erroneous, it had the effect of terminating defendant's status as a divertee, hence this action could not be abated by reason of such status. With that reasoning we agree because the justice court had jurisdiction in the fundamental sense to enter the dismissal and the trial court is not free to set that action aside on its own motion. We also agree with the conclusion because the defendant, by acquiescing in the decision of the superior court, has adopted its reasoning and thereby engaged in an improper collateral attack upon the action of the justice court which he initiated. Both reasons, as will be seen, are related.

### A.

 First of all, even if the first criminal action were deemed to be still pending, though in a state of diversion, the magistrate nevertheless had subject matter jurisdiction concerning the section 1381 dismissal. And the mere fact that there are two pending criminal prosecutions for the same offense does not entitle a defendant to abate the second one, much less to deprive a court of jurisdiction to proceed on it. It is settled that merely because another accusatory pleading is pending for the same offense does not constitute grounds in ordinary circumstances for abatement. (*People* v. *Follette* (1925) 74 Cal.App. 178, 187 [240 P.502].) Diversion, for the reasons set forth above, does entail the abatement of any action reinstituting the affected criminal proceedings. If the period of diversion were still in effect the defendant would have a right to preclude the reinstitution of criminal proceedings by the refiling of an accusatory pleading. But that right, like most other rights, can be waived by the defendant and forfeited if not timely asserted.

The superior court here confused subject matter jurisdiction with acts in excess of jurisdiction. "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an

absence of authority over the subject matter or the parties." (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) Defendant was personally present in the justice court and it had personal jurisdiction over him. Further, the justice court had jurisdiction over the subject matter of the charged crime and the section 1381 motion to dismiss the criminal proceedings and hence had the power to act. (See generally, Witkin, Cal. Criminal Procedure (1963) Jurisdiction and Venue, § 24, p. 28.) It follows that the trial court erred when it concluded that the justice court had no power to proceed. Its dismissal of this proceeding for that flawed reason constitutes an abuse of discretion.

### B.

 The superior court's decision was also predicated upon an improper collateral attack upon the prior dismissal by the justice court. Since that predicate is unsound, so is the decision which it supports.

Section 1381 affords an imprisoned person the ability to force dismissal or trial of a "pending" criminal proceeding within 90 days. The trial court concluded that section 1381 is inapplicable to charges which have been abated by diversion of the defendant under sections 1000 - 1000.5. Section 1381 applies when "there is pending, in any court of this state, any other indictment, information, complaint, or any criminal proceeding wherein the defendant remains to be sentenced . . . ." (*Ibid.*) The trial court reasoned that when diversion has been granted, as here, there is no "pending" complaint until "the criminal case shall be referred back to the court for resumption of the criminal proceedings" in accordance with the statutorily prescribed procedure. (§ 1000.3.) Whether an accusatory pleading is "pending" when the criminal proceeding which it initiated merely has been abated is a question we need not decide.[2] The trial court decided the case on the ground that

---

[2]Section 1000.3 states: "If it appears to the probation department that the divertee is performing unsatisfactorily in the assigned program, or that the divertee is not benefiting from education, treatment, or rehabilitation, or that the divertee is convicted of a misdemeanor which reflects the divertee's propensity for violence, or if the divertee is convicted of a felony, after notice to the divertee, the court shall hold a hearing to determine whether the criminal proceedings should be reinstituted. If the court finds that the divertee is not performing satisfactorily in the assigned program, or that the divertee is not benefiting from diversion, or the court finds that the divertee has been convicted of a crime as indicated above, the criminal case shall be referred back to the court for resumption of the criminal proceedings. If the divertee has performed satisfactorily during the period of diversion, at the end of the period of diversion, the criminal charges shall be dismissed."

It could be argued that a criminal proceeding which has been abated under section 1000 is nonetheless "pending." It still has a status, for it can be "reinstituted" under section 1000.3 and may not be "dismissed" until that section's conditions have been met. It also could be argued that these procedures could be waived by the invocation of section 1381 because that

it had no authority to proceed because the justice court lacked jurisdiction to act under section 1381. That is where it went wrong.

Defendant's status as a divertee was predicated upon the original accusatory pleading. To find, as did the superior court, that such status subsists entails the further finding that the dismissal of the original pleading was legally ineffective. In considering the propriety of the justice court's dismissal, the superior court engaged in an attack upon a prior adjudication, albeit on its own initiative. Although such a challenge is normally initiated by a party to the action, if a party accedes to the trial court's initiative and defends it, it thereby adopts the action as its own and must be so judged. In either event, the validity of the superior court's ground of action is put in issue.

■ A prior adjudication is potentially subject to challenge by direct or collateral attack. A direct attack occurs in a "*proceeding instituted for the specific purpose* of vacating, reversing, or otherwise attacking [the adjudication]." (See 8 Witkin, Cal. Procedure (3d ed. 1985) Attack on Judgment in the Trial Court, § 1, p. 403; original italics.) The defendant's motion to dismiss the refiled action is not a direct attack. Its purpose was to terminate the action under the second accusatory pleading on grounds consistent with the basis of the prior dismissal. But the trial court did not grant the dismissal on that ground. Rather, because of the ground of its ruling, it engaged in a collateral attack upon the prior order of dismissal. However, in acceding to that action and by his defense of it on appeal, the defendant has adopted the position of the trial court as his own.

A prior adjudication is subject to collateral attack only if it is outside the jurisdiction of the court which rendered it. (See 8 Witkin, Cal. Procedure, *supra,* Attack on Judgment in the Trial Court, § 1.) The trial court implicitly recognized this doctrine in characterizing the dismissal of the first accusatory pleading by the justice court as jurisdictional error, i.e., as an act beyond the power of the justice court, because of the perceived statutory constraints

is fully in keeping with its policy to provide a defendant with the opportunity to obtain either a concurrent or reduced aggregate sentence in connection with a sentence arising from a subsequent criminal proceeding. That is apparently what the defendant sought in this case by his motion predicated upon timeliness of the reinstitution of the proceedings. The defendant invoked section 1381 so that he might get the possible benefit of a concurrent (or one-third midterm) sentence by making it effective while serving his present sentence. No policy of the diversion statutes is ill-served by this result. The difficulty is that it is unclear whether the district attorney is given authority to institute revocation proceedings so that the directive of section 1381 may be complied with. However, we eschew a holding on this point since the question whether the justice court erred in granting the first dismissal is not in issue.

of section 1000.3. As related, "jurisdictional error" sometimes connotes judicial action which is precluded by the statute under which the court purports to act. (See 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 1.) At other times it connotes a failure of jurisdiction in the fundamental sense (see *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280) or a complete absence of authority with respect to the subject matter of the dispute. This dispute falls into the former category for no one challenges the authority of the justice court to determine the applicability of section 1381.

Assuming for the sake of argument that the trial court's reasoning was correct as far as it went, that the justice court lacked the statutory authority to dismiss the action, it did not go far enough. If an act in excess of jurisdiction, i.e. beyond statutory authority, is subject to collateral attack, there remains the question whether jurisdiction to do the act could have been conferred by consent or estoppel. (See 2 Witkin, Cal. Procedure, *supra,* § 266, at pp. 663-665.)

The closest analogy to the circumstances of this case is *In re Griffin* (1967) 67 Cal.2d 343 [62 Cal.Rptr.1, 431 P.2d 625]. In that case a convict sought habeas corpus relief from an order revoking probation after the term of probation had expired. The untimeliness was occasioned by the grant of a continuance requested by the convict. He contended that the order revoking probation was void because revocation within the term was "jurisdictional" under the statutes governing probation and that jurisdiction could not be conferred by estoppel. (*Id.,* at p. 346.) The Supreme Court answered as follows: "The jurisdictional concept involved in the cases holding that the court is without power to revoke probation after the end of the probationary term is not lack of jurisdiction of the cause but excess of jurisdiction. [Citations.] Neither the probation statutes nor the cases applying them support a holding that expiration of the probationary period terminates the court's jurisdiction of the subject matter. The statutes themselves contemplate that such fundamental jurisdiction continues, for they provide for the court's determination of certain matters after the end of the probationary term. [¶] When, as here, the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction." (*Id.,* at p. 347; fn. omitted.)

Diversion and probation are analogous. "[D]iversion may ... be viewed as a specialized form of probation, available to a different class of defendants but sharing many similarities with general probation ...." (*People* v. *Superior Court* (*On Tai Ho*) (1974) 11 Cal.3d 59, 66 [113 Cal.Rptr. 21, 520 P.2d 405].) The reasoning of *In re Griffin, supra,* is directly apposite. If the

justice court did act in excess of its statutory jurisdiction in entertaining defendant's motion to dismiss under section 1381, it did so at defendant's behest. We discern no policy of the diversion statutes which would be disserved by permitting defendant to waive the procedural requirements of section 1000.3 and to acquiesce in summary revocation of diversion. (See fn. 2, *ante.*) These requirements appear to be imposed for the benefit of the defendant. Just as with probation, the diversion statutes contemplate ongoing subject matter jurisdiction in the court in providing that interim progress reports shall be filed with the court, that diversion may be revoked only in specified circumstances, and that upon successful completion of diversion the court shall dismiss the underlying accusatory pleading. (See §§ 1000.2, 1000.3; cf. *In re Griffin, supra,* 67 Cal.2d at p. 347, fn. 3.)

If the justice court erred in granting dismissal, even if the error was in excess of its statutory jurisdiction as perceived by the trial court, the dismissal was not subject to collateral attack in the proceedings we review. The superior court thus had no authority to dismiss the information.

The order of dismissal is reversed.

Regan, Acting P. J., and Carr, J., concurred.